Per Curiam.

The record shows that on numerous occasions, beginning in 1956 and in each year thereafter, the relator both orally and in writing requested the respondent to allocate a reasonable sum for the payment of an investigator to be appointed by relator. The request of relator was made pursuant to authority granted by Section 313.05, Revised Code, which provides, in part, thát in counties where a county morgue is maintained the coroner may appoint an investigator or investigators and define their duties.
Having met with consistent refusals to comply with his request, the relator, in 1959, brought an action for a declaratory judgment in the Court of Common Pleas of Mahoning County, which court held that relator is entitled under the Code to appoint an investigator and “that the investigator so appointed # * * shall be paid out of funds of Mahoning County for the carrying out of the performance of his duties under the direction of said coroner.”
An appeal from this declaratory judgment was perfected by the prosecuting attorney on behalf of the respondent but was dismissed with prejudice prior to judgment by the Court of Appeals.
Following the dismissal of the prosecuting attorney’s appeal from the declaratory judgment, the relator, by letter, added to his prior budget request in the total amount of $40,061.60, a request for $9,500 for salary of an investigator, an automobile for such investigator’s use and expenses of operation of the automobile. The appropriation made by respondent for the operation of the relator’s office was $30,570, just $9,491.60 less than the amount requested.
The record clearly indicates that at the time of the trial of this cause in the Court of Common Pleas, there was at the disposal of the respondent a sum approximating $60,000 which had been appropriated for “unanticipated emergencies.”
There is no question that boards of county commissioners have, and under our present system of county government must *8 have, a wide discretion in the allocation of available funds to the various offices of the county. And it is equally true in these days of scrounging for funds by most of the counties of the state that this discretion must be exercised wisely. But the discretion reposing in boards of county commissioners is not without limit. Certain duties are imposed upon them by legislative command and by the needs of a complex society. The G-eneral Assembly, recognizing a possible need in that field, authorized a county coroner in a county which maintains a morgue to appoint an investigator. The Court of Common Pleas, in an action specifically intended to determine the question, found that the relator is entitled to appoint an investigator and entitled to have his salary and expenses paid from county funds.
Since the respondent, apparently, had not intended to comply with relator’s earlier requests for an appropriation for an investigator, the ruling of the Court of Common Pleas imposing a duty on it to do so constituted an “unanticipated” claim on available funds and certainly would have authorized it to appropriate from the “unanticipated emergencies” fund an amount sufficient to pay the salary of the investigator.
The fact that the respondent reduced the requested appropriation for relator’s office by almost exactly the amount requested for the salary and expenses of an investigator, at a time when there’ were funds available for that use, indicates an arbitrary refusal on the part of respondent to comply with the duty imposed upon it by statute and by the order of the Common Pleas Court.
The judgment of the Court of Appeals is, therefore, reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Weygandt, C. J., Taft, Matthias, Bell, Herbert and Peck, JJ., concur.